**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| Avis Simon, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | File No.: |
| | ) | |
| GRADY MEMORIAL HOSPITAL | ) | **JURY TRIAL DEMANDED** |
| CORPORATION, | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DAMAGES AND**
**EQUITABLE RELIEF**

COMES NOW, Plaintiff Avis Simon ("Ms. Simon" or "Plaintiff") and submits the following Complaint for Damages and Equitable Relief against Defendant Grady Memorial Hospital Corporation ("Grady" or "Defendant"), showing the Court as follows.

## INTRODUCTION

This case arises out of systemic discrimination at Grady, as well as race-based retaliation against Plaintiff Avis Simon for participation in an activity protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e and 42 U.S.C. § 1981, and under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* ("ADEA"). Ms. Simon, a reservist in the United States Navy, is a former registered nurse at Grady, where she worked for nearly seven years until

her retaliatory termination on or about January 30, 2023. Ms. Simon was terminated because she asserted claims of race and age discrimination and retaliation in internal grievances, which is a statutorily protected activity.

After being told she could reapply at Grady for a different position, Ms. Avis re-applied at Grady for a registered nurse position in a different department in the Spring of 2023. On March 27, 2023, Ms. Simon received a written job offer from Grady and signed the offer the same day. However, on or about April 17, 2023, Ms. Simon attended a new hire orientation and was escorted out of the orientation by a Grady employee. The same day, she received a call from Phenicia Taylor, of the Grady Human Resources Department ("HR"), and a woman who identified herself as "only Shericka" who informed Ms. Simon that her offer was rescinded. The reason provided was that she had received a negative reference from Grady, and was told that she would receive written notice of the recission. As of this date, Ms. Simon has received no such written notice. Thus, Grady not only wrongfully terminated Ms. Simon after she made a complaint about race discrimination at Grady, but was re-hired only to have the position rescinded by Grady, violating her statutory rights. In support of her Complaint, Plaintiff states as follows:

1. Ms. Avis Simon, a Black woman, began her career with Defendant Grady in February of 2016 as a nurse supervisor. Ms. Simon is also a reservist for the United States Navy, where she participates in active duty as a registered nurse on a

monthly basis to serve and protect our country.

2. After proving herself to be an outstanding nurse supervisor, she was promoted to clinical nurse manger in 2018, merely two years after she was hired.

3. In March of 2021, she was transferred to the Marcus Stroke and Neuroscience Center.

4. While at the Marcus Stroke and Neuroscience Center, ("the Center") she worked under the direct supervision Tariq Qureshi ("Qureshi"), Vice President of the Center, and Kelly Porrey ("Porrey"), the Practice Manger.

5. At the time of her transfer, she had never received any written or verbal complaints about her work.

6. Despite her years of excellent performance, on January 30, 2023, Defendant eliminated Ms. Simon's position for pretextual reasons and in retaliation for engaging in protected activity.

7. At the time her position was eliminated, she was informed that she would be rehired only to have her job offer rescinded in public, and escorted off Grady property in front of her peers and colleagues.

8. Plaintiff herein claims (1) race and (2) retaliation in violation of Title VII against Defendant Grady; and (3) race discrimination and (4) retaliation in violation of 42 U.S.C. § 1981; (5) age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.*

("ADEA"), and (6) retaliation in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* against Defendant Grady.

9. Plaintiff seeks injunctive and declaratory relief, back pay and lost benefits, reinstatement or front pay in lieu thereof, liquidated damages, compensatory damages, punitive damages, and attorneys' fees and costs of litigation to remedy the civil rights violations alleged herein.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

10. Plaintiff has satisfied all administrative prerequisites to perfect her claims of race discrimination and retaliation under Title VII and claims of age discrimination and retaliation under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* Plaintiff timely filed a Charge of Discrimination with the EEOC, and Amended Charge of Discrimination, and has received a Notice of Right to Sue for her claims under Title VII within the last ninety days.

11. Plaintiff's EEOC Charge alleges, on its face, race discrimination, age discrimination, and retaliation, including that Grady created and fostered a discriminatory environment where Ms. Simon was subjected to a hostile work environment, was denied a re-hire on the basis of her race and age, and was retaliated against for reporting race and age discrimination.

**JURISDICTION AND VENUE**

12. Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

13. This Court has personal jurisdiction over all the parties to this action. Grady is a large, if not, the largest hospital in the State of Georgia and serves as a public hospital for the City of Atlanta.

14. Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

**PARTIES**

15. Plaintiff Avis Simon, an African-American woman, over the age of forty, was, at all relevant times, a resident of Cobb County, Georgia.

16. Defendant Grady Memorial Hospital Corporation is a 501(c)(3) not-for-profit health system approved by the DeKalb and Fulton County Commissions as a domestic corporation on March 17, 2008.

17. Defendant Grady Memorial Hospital Corporation may be served with a summons and copy of the Complaint in this action by delivering process to its President and CEO, John Haupert, at 80 Jesse Hill Jr. Drive SE, Atlanta, Georgia, 30303. Defendant may also be served through its registered agent, Timothy Jefferson, at the

same address.

## FACTS

18. Ms. Simon began her employment with Grady on or about February 29, 2016, as nurse supervisor in the Sickle Cell Department.

19. In 2018, just two years after she was hired, and proving herself as an excellent nurse supervisor, Ms. Simon, was promoted to clinical nurse manager.

20. On March 17, 2021, Ms. Simon was transferred to the Marcus Stroke and Neuroscience Center within Grady. At this time, Ms. Simon had never received any written or verbal complaints from Grady, and had only received accolades.

21. At the Center, Ms. Simon's direct supervisors were Qureshi the Vice President of the Center, and Porrey, the Center's practice manager.

22. On or about March 19, 2021, Porrey entrusted her with many leadership tasks. Because of this established trust, Porrey informed Ms. Simon that she was creating a Charge Nurse position, which is a supervisory role, within the Center specifically for Ms. Simon.

23. However, instead of placing Ms. Simon in this position, Porrey gave the position to a younger, white male nurse ("Nurse T.M.") in the Orthopedic Clinic, which was also under the purview of Porrey. Nurse T.M. was not as qualified as Ms. Simon. Regardless, Porrey demanded that Ms. Simon help transition Nurse T.M. into the nurse supervisor role.

24. Ms. Simon engaged in these additional job duties at no additional pay, and no change in title.

25. On or about May 20, 2021, Ms. Simon began her nurse orientation at the Center. Ms. Simon asked Porrey if she could work from home in order to complete her coursework. However, Porrey denied this request.

26. On or about August 24, 2021, a young, white, female nurse ("Nurse J.M.") was offered a Charge Nurse position as a part time nurse. This position was never posted to the public, but was created by Porrey. Ms. Simon was never considered nor was she given an opportunity to apply for this supervisor position.

27. Nurse J.M. only had an associate degree in nursing, in contrast to Ms. Simon's Masters of Science Degree of Nursing, and was grossly underqualified for the position. Nurse J.M. was given a private office, while Ms. Simon and other African American nurses, despite being more qualified than Nurse J.M., were forced to use shared computers.

28. Nurse J.M. began her nursing orientation on or about October 4, 2021. Unlike Ms. Simon, Porrey allowed Nurse J.M. to complete her coursework from home, despite Ms. Simon previously making this same request.

29. Nurse J.M. was also hired as a part-time nurse based on her ability, while Ms. Simon and other African American nurses were not afforded this option. Nurse J.M. was also permitted to work from home, while the African American nurses, including Ms. Simon, were required to work in the office.

30. On or about September 3, 2021, Porrey made racial slurs and derogatory comments about African Americans in front of the African American employees. Specifically, Porrey made eye-rolling gestures towards the African American employees and said "you people here have attitudes." The phrase "you people" is a common, derogatory term to describe African Americans.

31. In the same conversation, while discussing a supervisory role, Porrey said "there is no one here that I want" for the role. This comment was directed towards Ms. Simon and other African American employees, and was incredibly disheartening to Ms. Simon, as she had worked tirelessly for Grady and Porrey.

32. On or about October 27, 2021, Porrey told Ms. Simon and one other African-American nurse and two African-American medical assistants, that beginning the next day, they were assigned to float the Cardiac Clinic at Grady.

33. Ms. Simon was troubled by this assignment for many reasons. First, Ms. Simon, who had worked in the Center, was not qualified as a nurse who provides cardiac care. Second, Ms. Simon was instructed that she was either to work 40 hours per week, or have the option of being "flexed off" work, i.e. would not receive over-time pay or be able to use personal time off.

34. It was clear that Porrey used the reassignment of Ms. Simon to prevent her from working at the Center.

35. In contrast, Nurse J.M. and a white, female PRN, ("PRN M.C.") were

provided preferential treatment as they (1) were able to work full time, (2) were able to accrue overtime pay, and (3) were able to work in non-clinical, administrative roles. Ms. Simon was not given these options.

36. This racist and ageist environment at Grady was part of an ongoing pattern of harassment that created a hostile work environment that continued until the end of Ms. Simon's employment. It also shows the bias of Grady's decision-makers who directly controlled Ms. Simon's career advancement and prospects.

37. In addition to the openly racist and ageist environment tolerated by Grady, it also retaliated against Ms. Simon for complaining of discrimination.

38. Over the course of her employment, Ms. Simon complained of discrimination to the highest levels within Grady, yet Grady took little action to protect Ms. Simon and other African American employees over the age of forty.

39. On or about October 27, 2021, Ms. Simon went directly to Billie Fraizer, a Grady HR Consultant to discuss the race discrimination that she faced by Porrey.

40. Later the same day, Ms. Simon and other African American nurses met with Qureshi to explain Porrey's treatment of herself and other African American employees. In addition to the derogatory "you people" comment, Porrey also used racial slurs such as "redneck" and said that because she was a "redneck" that she liked to drink beers on the weekend. Ms. Simon also explained to Qureshi that she had contacted HR about the treatment to which he said, "I wish you had not done that," essentially chastising her for

reporting the racial inequities and discrimination by Porrey. He also told Ms. Simon and the other African American employees that Porrey had his "ear," of which Ms. Simon took as a threat against further reports.

41. Despite Quershi verbally punishing Ms. Simon for reporting the discrimination by Porrey, Ms. Simon complied by the Grady Anti-Discrimination and Anti-Harassment Policy, as a Grady employee is encouraged to promptly report discrimination to his or her supervisor, or to the Grady HR Department or Grady Confidential Hotline.

42. Ms. Simon abided and adhered to the policy by reporting the discrimination to HR, despite being subsequently chastised by Qureshi.

43. On or about November 8, 2021, after not receiving any word about the complaints against Porrey, Ms. Simon, with other African-American employees, spoke with Qureshi and Fraizer again about the discriminatory treatment by Porrey. However, Ms. Simon heard nothing further about the complaints.

44. Upon information and belief, Frazier left Grady shortly thereafter and is no longer employed by Grady.

45. Upon information or belief, on or about April 27, 2022, Porrey received a negative performance evaluation, but blamed the "black nurses" for this poor review.

46. After receiving this review, Porrey began openly ignoring the African-American nurses by not speaking with them, refusing to return their calls, not including

them on emails, and only working with Nurse J.M.

47. Thus, Porrey created a hostile work environment by retaliating against Ms. Simon and other African-American employees for making their complaints against Porrey. This act of retaliation is not only against the law, but against the Grady Anti-Discrimination and Anti-Harassment Policy.

48. Further, until the time of her termination, Grady set Ms. Simon up to fail and failed to support her in her role.

49. In June of 2022, Ms. Simon and another African-American full time nurse received negative performance reviews. In contrast, Nurse J.M. received a much favorable performance review.

50. On or about July 11, 2022, after returning from military active duty, Ms. Simon contacted Joseph Lee, Grady HR Senior Consultant and Sabrina Broadnax, Grady HR Vice President, of the discriminatory actions taken by Porrey against Ms. Simon and other African American employees.

51. On or about July 12 and 14, 2022, Ms. Simon spoke with Fran Carter, of Grady HR about Porrey's age discriminatory actions committed by Porrey against Ms. Simon.

52. Specifically, Porrey completed and submitted an annual performance evaluation while Ms. Simon was on active duty, without Ms. Simon's knowledge of the performance evaluation.

53. Additionally, Porrey refused to allow Ms. Simon to change her schedule to allow her to attend her Ph.D. program. Porrey's reason was that "the girls" i.e. the younger staff members, needed to leave early to pick up their children from school.

54. Thus, because she was older and no longer had young children, Ms. Simon was forced to frequently work late to accommodate the schedules of her younger counterparts.

55. On or about July 15, 2022, Ms. Simon, at the suggestion of Ms. Carter, filed an internal complaint against Porrey for discrimination, bullying and retaliation. Thus again, Ms. Simon adhered and abided by the Grady Anti-Discrimination and Anti-Harassment policy.

56. On or about July 21, 2022, Ms. Simon met with Ms. Carter in person. During this meeting, she provided Ms. Carter with documents supporting her claims of discrimination and retaliation against Porrey.

57. On or about July 21, 2022, Ms. Simon met a second time with Ms. Carter in person. Ms. Simon expressed her fear of retaliation and reprisal by Porrey due to Ms. Simon's complaints against Porrey. Ms. Carter assured Ms. Simon that Porrey would not retaliate against Ms. Simon. She further explained that Porrey was counseled on her discriminatory behavior.

58. On or about August 23, 2022, Ms. Simon went to Ms. Carter, yet again, to discuss Porrey's behavior and discrimination, as it only continued after Ms. Simon made her

complaint.

59. On or about September 30, 2022, Porrey closed the Center without notifying all staff members, including Ms. Simon. Ms. Simon asked both Quershi and Ms. Carter about the Center's closure, and they denied that they approved the closure. Ms. Carter then instructed Ms. Simon to send her an email about Porrey and Quershi's comments and retaliation against Ms. Simon, which Ms. Simon promptly sent.

60. On or about January 30, 2023, Ms. Simon was informed that her position, as well as other full-time African American Nurse's positions, were being eliminated by Grady.

61. However, Nurse J.M., a part-time employee was provided with a transfer to a different department within Grady. This position also fell under the supervision of Qureshi. Ms. Simon, along with the other African American employees, were denied this opportunity.

62. To add insult to injury, this position was not posted to the general public, or made available to Ms. Simon or the other African American employees.

63. On or about January 30, 2023, during a meeting with Mr. Lee, Ms. Carter, Qureshi, and Ms. Simon, Qureshi explained that Ms. Simon's position was eliminated or "restructured" because the Center had "no need for a full-time nurse." He also stated that he had hired a part-time nurse, "Jessica" from the Neurology Center's intensive care unit, however, to the dismay of Ms. Simon this position was never offered to Ms. Simon or other

African American nurses.

64. On or about January 30, 2023, Ms. Simon received her separation papers.

65. In February of 2023, Ms. Simon interviewed with Judieann Spencer of Grady for a full-time Registered Nurse Coordinator position at Grady's Correll Eye Center ("Eye Center.")

66. On or about February 24, 2023, Ms. Simon was interviewed by Joy Tye, also of the Eye Center. Additional Grady employees also interviewed Ms. Simon during this interview, thus creating an interview panel. Ms. Tyestated that she would be extending an offer of the position to Ms. Simon, but that she needed to first speak with Porrey regarding a transfer date. Ms. Simon was thrilled to be potentially re-hired by Grady as she loved her work in the hospital.

67. On or about February 28, 2023, Ms. Simon received a call from Ms. Carter, who was on Family Medical Leave. Ms. Carter advised Ms. Simon to sign the separation agreement and accept the severance pay, which she told Ms. Simon was "free money." Ms. Carter also told Ms. Simon that in the event she found another position at Grady, that she would have to pay the "free money" back to Grady.

68. On or about March 1, 2023, Ms. Simon received a call from Mr. Lee who stated that he will keep her in the Grady HR system until March 31, 2023 in order to receive other job offers at Grady. However, on or about March 6, 2023, Mr. Lee called Ms. Simon again and told her that he would be removing her from the Grady HR system.

He denied having their conversation on or about March 1, 2023.

69. On or about March 21, 2023, Ms. Simon received a phone call from Ms. Taylor regarding a pending job offer for the eye center. The same day, she was sent a link via email by Grady to fill out a background check, which she filled out immediately.

70. On or about March 26, 2023, Ms. Simon spoke with Dr. Ehizele Osheobo, a visiting doctor from Emory University who worked at Grady, and was informed that after Ms. Simon's position was restructured, Qureshi and Porrey hired three full-time nurses. Thus, negating the need for the "restructure."

71. Even more alarming, Dr. Osheobo informed Ms. Simon during this conversation that he learned that Porrey said that she "found a way to get rid of" Ms. Simon and other African-American nurses, so she "took" the opportunity.

72. Porrey's way to "get rid of" the African-American nurses and Ms. Simon was a direct retaliation against them due to their complaints.

73. On or about March 27, 2023, Ms. Simon received a verbal job offer for the Registered Nurse Coordinator of Ophthalmology position at the Eye Center.

74. She also was informed by Ms. Taylor that she had attempted to send Ms. Simon an offer for over a week, as the Grady HR system had her categorized as "ineligible' for a rehire, and that she needed to determine why Ms. Simon was listed as "ineligible."

75. Ms. Taylor then called Ms. Simon on the same day, and informed her that she was no longer listed as "ineligible" to be re-hired by Grady, as her position was eliminated

due to restructuring, as opposed to a termination.

76. On the same day, Ms. Simon received the offer letter for the Eye Center, which she signed electronically the same day. Ms. Simon was elated to be re-hired by Grady.

77. On or about April 5, 2023, Ms. Simon completed the Grady pre-employment health assessment by Grady employee health. By completing this assessment, Ms. Simon was assured that her re-employment at Grady was all but guaranteed.

78. On or about April 13, 2023, Ms. Simon received a call from Ms. Taylor who told her that the job offer was rescinded. The reason given was that Ms. Simon received a negative reference by the Neurology Center's leadership.

79. Upon information and belief, these negative references were provided by Quershi and Porrey. Yet again, Porrey retaliated against Ms. Simon for her complaints against Porrey and her discriminatory behavior. Ms. Simon received no written documentation that the offer was rescinded.

80. Yet, on the same day, Ms. Simon received an email with instructions on the New Hire Orientation, which she was instructed to attend.

81. On or about April 17, 2023, Ms. Simon reported to the New Hire Orientation, and received a new hire package.

82. About an hour after the orientation began, Ms. Simon was removed from the orientation by Tanisha Assad, Grady HR Generalist. Ms. Simon was shocked and

embarrassed that she was escorted out of the New Hire Orientation, as many of her peers watched in disbelief.

83. On the same day, Ms. Simon received a phone call from Ms. Taylor and a woman who only identified herself as “only Shericka” who stated that the offer as a Registered Nurse at the Eye Center was rescinded. Ms. Simon asked for written documentation to which Shericka said that she did not have to provide it. Shericka informed Ms. Simon that the offer was rescinded due to a negative job reference, but refused to tell Ms. Simon who provided this reference. Shericka also told Ms. Simon that she was ineligible to be rehired by Grady and to no longer apply for any positions within Grady.

84. Ms. Simon was incredibly disheartened, not only by her removal from the orientation, but due to a negative reference, which was likely from Porrey and/or Qureshi.

85. Approximately an hour later, Ms. Taylor called Ms. Simon to inform her that she would receive written notice that the position would be rescinded. As of the date of the filing of this complaint, Ms. Simon has received no such documentation.

86. Upon information and belief, in June 2023, Porrey was terminated from Grady.

87. Upon information and belief, Nurse T.M. was also terminated shortly after Porrey, as she no longer supervised or controlled his department.

**COUNT I**
**RACE DISCRIMINATION**

Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.
***Against Defendant Grady Memorial Hospital Corp.***

88. Plaintiff incorporates all paragraphs of this Complaint by reference as if they were fully set forth herein.

89. Plaintiff is a member of a protected class in that she is African American.

90. At all relevant times, Plaintiff was an "employee" of Defendant Grady as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq*.

91. At all relevant times, Defendant Grady was an "employer" as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq.*

92. Defendant Grady subjected Plaintiff to disparate treatment in the terms and conditions of employment and subjected her to adverse employment actions based on her race, including, but not limited to: (1) creating barriers based on Plaintiff's race that her white, similarly situated colleagues are not subjected to (2) "restructuring" her position while allowing white, similarly situated colleagues to continue their employment (3) terminating her employment, and (4) subjecting her to shock and embarrassment due to being removed from the New Orientation Hire in front of her peers.

93. Defendant Grady lacks any legitimate justification for subjecting Plaintiff to the disparate treatment and adverse employment actions complained of above, and/or any such purported justifications are mere pretext for race

discrimination.

94. Defendant Grady's above-pled actions constitute race discrimination in violation of Title VII of the Civil Rights Act of 1964.

95. The actions of Defendant Grady in subjecting Plaintiff to disparate treatment and the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

96. Plaintiff's race was a "motivating factor" in Grady's decision(s) to subject her to discrimination on the basis of her race as pled above.

97. As a direct and proximate result of Defendant Grady's violations of Title VII, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

98. As a result of the above-pled violations of Title VII, Plaintiff is entitled to recover her lost wages and economic benefits of her employment, compensatory damages for emotional distress, as well as front pay and other equitable relief, and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT II
## TITLE VII RETALIATION

Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

***Against Defendant Grady Memorial Hospital Corporation***

99. Plaintiff incorporates all paragraphs of this Complaint by reference as if they were fully set forth herein.

100. Plaintiff engaged in statutorily protected activity by objecting to and complaining against race discrimination prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. including but not limited to, (1) complaining, both verbally and in writing, about (2) the racial discriminatory and hostile work environment created by Porrey due to her refusal to treat African American employees as favorably as Caucasian employees (3) filing an internal HR grievance alleging race discrimination and retaliation and (4) filing a Charge of Discrimination with the EEOC alleging race discrimination, retaliation, and a hostile working environment.

101. Title VII prohibits Defendant Grady from retaliating against Plaintiff because she opposed, objected to, and complained against race discrimination prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

102. Defendant Grady subjected Plaintiff to retaliation because she opposed, objected to, and complained against illegal race discrimination by taking various retaliatory actions against her including, but not limited to: (1) failing to accommodate her as her white colleagues were accommodated; (2) being subjected to verbal attacks by Porrey due to Plaintiff's race; (3) having

her position "restructured" while other white, similarly situated colleagues remained employed (4) rehiring her as she was eligible to be rehired, and then rescind the offer and (5) escorting her out of the New Hire Orientation in front of her peers.

103. Defendant Grady lacks any legitimate justification for subjecting Plaintiff to the adverse actions complained of above, and/or any such purported legitimate justifications are mere pretext for retaliation.

104. Defendant Grady's above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in violation of Title VII.

105. Defendant Grady's actions were willful, wanton, and intentionally directed to harm Plaintiff.

106. Defendant Grady's actions were reckless and were taken in willful disregard of the probable consequences of its actions.

107. As a direct and proximate result of Defendant Grady's retaliatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

108. Pursuant to Title VII, Plaintiff is entitled to damages in amount to be determined by the trier of fact, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees

and costs of litigation, and all other relief recoverable under Title VII and statutes providing for relief under Title VII.

**COUNT III**
**RACE DISCRIMINATION UNDER 42 U.S.C. § 1981**
***Against Defendant Grady Memorial Hospital Corporation***

109. Plaintiff incorporates all paragraphs of this Complaint by reference as if they were fully set forth herein.

110. Plaintiff and Defendant were parties to an employment agreement under which Plaintiff worked for Defendant and Defendant compensated Plaintiff for her work.

111. Plaintiff performed her contractual obligations under her employment agreement.

112. 42 U.S.C. § 1981 prohibits Defendant from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of her employment agreement with Defendant.

113. Defendant violated Plaintiff's rights under 42 U.S.C. § 1981 on the basis of her race by, *inter alia*, Defendant Grady subjected Plaintiff to retaliation because she opposed, objected to, and complained against illegal race discrimination by taking various retaliatory actions against her including, but not limited to: (1) failing to accommodate her as her white colleagues were accommodated; (2) being subjected to verbal attacks by Porrey due to Plaintiff's race; (3) having her position

"restructured" while other white, similarly situated colleagues remained employed (4) rehiring her as she was eligible to be rehired, and then rescind the offer and (5) escorting her out of the New Hire Orientation in front of her peers.

114. Plaintiff's race was a but-for factor in Defendant's decision(s) to subject her to discrimination on the basis of her race as pled above.

115. As a direct and proximate result of Defendant's violations of 42 U.S.C.§ 1981, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

116. Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff and taken under color of state law.

117. Defendant's actions were reckless and were taken in willful disregard of the probable consequences of its actions. Pursuant to 42 U.S.C. § 1981, Plaintiff is entitled to damages in an amount to be determined by the trier of fact, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, and pursuant to 42 U.S.C. § 1988, attorneys' fees and costs of litigation, as well as all other relief recoverable under § 1981.

## COUNT IV
## RETALIATION UNDER 42 U.S.C. § 1981
***Against Defendant Grady Memorial Hospital Corporation***

118. Plaintiff incorporates all paragraphs of this Complaint by reference as if they were fully set forth herein.

119. 42 U.S.C. § 1981 prohibits Defendant from retaliating against Plaintiff because she opposed, objected to, and complained against race discrimination prohibited by 42 U.S.C. § 1981.

120. Plaintiff engaged in statutorily protected activity by objecting to and complaining against race discrimination prohibited by 42 U.S.C. § 1981, as well as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. by, *inter alia*, (1) opposing, both in person and in writing Porrey's discrimination against African American employees; (2) filing an internal HR grievance alleging race discrimination; (3) filing a Charge of Discrimination with the EEOC alleging race discrimination and retaliation.

121. Defendant Grady subjected Plaintiff to retaliation because she opposed, objected to, and complained against illegal race discrimination by taking various retaliatory actions against her including, but not limited to: (1) failing to accommodate her as her white colleagues were accommodated; (2) being subjected to verbal attacks by Porrey due to Plaintiff's race; (3) having her position "restructured" while other white, similarly situated colleagues remained employed (4) rehiring her as she was eligible to be rehired, and then rescind the offer and (5) escorting her out of the New Hire Orientation in front of her peers.

122. Defendant's above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in violation of 42 U.S.C. § 1981 via § 1983.

123. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

124. Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff.

125. Defendant's actions were reckless and were taken in willful disregard of the probable consequences of its actions.

126. Plaintiff is entitled to damages in amount to be determined by the trier of fact, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages and punitive damages. Pursuant to 42 U.S.C. §1988 Plaintiff is entitled to recover attorneys' fees and costs of litigation.

**COUNT V**
**VIOLATION OF SECTION 7(F)(4) OF THE ADEA, 29 U.S.C. § 626(F)(4)**
***Against Defendant Grady Memorial Hospital Corporation***

127. Plaintiff hereby incorporates and re-alleges each and every foregoing paragraph with the same force and effect as if fully set forth herein.

128. Since at least 2021 until at least April 2023, the Defendant engaged in resistance to Ms. Simon having the same schedule as her younger colleagues, being allowed to transfer to another department after her position was terminated, such as her younger colleagues were able to do, and ability to work and train from home, such as her younger colleagues were able to do, all in violation of Section 7(f)(4) of the

ADEA, 29 U.S.C. § 626(f)(4).

129. The unlawful employment practices complained of in the paragraphs above deny Ms. Simon the full exercise of her rights under the ADEA.

**COUNT VI**
**RETALIATION IN VIOLATION OF SECTION 4(D) OF THE ADEA, 29 U.S.C. § 623(D)**
***Against Defendant Grady Memorial Hospital Corporation***

130. Plaintiff hereby incorporates and re-alleges each and every foregoing paragraph with the same force and effect as if fully set forth herein.

131. Plaintiff engaged in conduct protected by the ADEA when she opposed practices made unlawful by the ADEA and/or when she complained about her treatment by Porrey to the Grady HR Department.

127. 131. The Defendant engaged in unlawful employment practices in violation of Section 4(d) of the ADEA, 29 U.S.C. § 623(d), when it terminated Plaintiff's employment, and refused to re-hire her, in retaliation for her protected conduct, including, but not limited to (1) complaining, both verbally and in writing, about (2) the age discriminatory and hostile work environment created by Porrey due to her refusal to treat employees over the age of fourty as favorably as Caucasian employees (3) filing an internal HR grievance alleging race discrimination and retaliation and (4) filing a Charge of Discrimination with the EEOC alleging race discrimination, retaliation, and a hostile working environment.

132. As a result of the retaliation, Plaintiff suffered harm, including but not limited to attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A. That this Court adjudicate and declare that Defendant has violated Plaintiff's federally protected rights as pled above;

B. That this Court permanently enjoin Defendant from committing similar violations in the future;

C. That this Court award Plaintiff back pay, all lost wages and benefits, pay increases Plaintiff would have received absent her unlawful termination, and all other benefits of employment reducible to a dollar value;

D. That this Court award Plaintiff pre-judgment and post-judgment interest as required by law;

E. That this Court award Plaintiff compensatory damages for emotional pain and suffering as determined by the enlightened conscience of a jury;

F. That this Court award Plaintiff punitive damages pursuant to Title VII, 42 U.S.C. § 1981, and all other applicable federal and state laws in an

amount to be determined by the trier of fact;

G. That this Court order Defendant to reinstate Plaintiff with all compensation and benefits made retroactive to her last day of employment or, in lieu of same, award front pay;

H. That this Court award Plaintiff her reasonable attorneys' fees and expenses; and

I. That this Court grant such additional relief as may be proper and just.

Respectfully submitted this 9th day of July, 2024.

**Kimberly M. Perkins**
**Georgia Bar No.: 389571**
**kimberly@perkinstriallawyers.com**
**3344 Peachtree Road NE**
**Suite 800**
**Atlanta. Georgia 30326**

**DICELLO LEVITT LLP**

Diandra Debrosse Zimmermann*
fu@dicellolevitt.com
505 20th Street North
Suite 1500
Birmingham, Alabama
**Pro Hac Vice to be Submitted*

Kenneth Abbarno
kabbarno@dicellolevitt.com
8160 Norton Parkway
Mentor, Ohio 44060
**Pro Hac Vice to be Submitted*

Sara Aguiñiga*
saguiniga@dicellolevitt.com
801 17th St Northwest
Suite 430
Washington, DC 20036
*Pro Hac Vice to be Submitted*